UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>BP PRODUCTS NORTH AMERICA INC.,<br><br>      Defendant. | Civ. No.  1:12-cv-02886-RDB |

**MEMORDANDUM IN SUPPORT OF
MOTION TO ENTER CONSENT DECREE**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

     I.     THE PROPOSED CONSENT DECREE IS FAIR AND ADEQUATE ................. 5

     II.    THE PROPOSED CONSENT DECREE IS REASONABLE ............................... 6

     III.   THE PROPOSED CONSENT DECREE IS NOT ILLEGAL, A PRODUCT OF COLLUSION, OR AGAINST THE PUBLIC INTEREST .............................. 7

     IV.   PUBLIC COMMENTS DO NOT PRESENT A REASON WHY THE CONSENT DECREE IS NOT FAIR, ADEQUATE AND REASONABLE .......... 7

CONCLUSION ............................................................................................................................... 8

**PRELIMINARY STATEMENT**

On September 27, 2012, the United States lodged a Complaint and Consent Decree with the Court, pursuant to Section 311(b)(7)(C) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7)(C). The complaint alleges that Defendant violated the CWA by failing to prepare and implement an adequate Facility Response Plan ("FRP") for its terminal in Curtis Bay, Maryland in violation of 40 C.F.R. § 112.20, and for failing to develop and implement an adequate program of oil spill response drills/exercises in violation of 40 C.F.R. § 122.21. The complaint seeks civil penalties and injunctive relief.

In accordance with the policy of the U.S. Department of Justice stated at 28 C.F.R. § 50.7, the United States published notice of the proposed Consent Decree in the Federal Register on October 3, 2012, soliciting public comment for a period of thirty days. 77 Fed. Reg. 60,461. The public comment period has expired, and only one comment, discussed in Part IV below, was received. For the reasons set forth below, the United States respectfully requests that the proposed Consent Decree be entered as an order of the Court.

**BACKGROUND**

BP Products North America, Inc. has owned and operated the Curtis Bay Terminal, which has the capacity to store approximately 21,840,000 gallons of oil in above-ground storage tanks, since 1945. The terminal is located near several ecologically sensitive areas in Curtis Creek including wetlands, aquatic grass beds and oyster beds. The complaint alleges that Defendant violated 40 C.F.R. § 112.20 and .21 by failing to prepare and submit to EPA an adequate facility response plan for oil spills, by failing to develop and implement an adequate program of drills and exercises for oil spills, and by failing to successfully

complete, on August 17, 2005 and October 3, 2005, unannounced oil spill response drills initiated by the EPA at the Curtis Bay Terminal.

Under the Proposed CD, Defendant will pay a civil penalty of $210,000 within 30 days of the effective date of the decree. In addition, with respect to the Curtis Bay terminal, the Proposed CD requires Defendant to comply with 40 C.F.R. § 112.20-21 (Proposed CD ¶ 10), to conduct exercises not otherwise required by law in certain circumstances (*id.* ¶ 11.c), and to create and retain detailed records of drills and exercises for a period of three years (*id.* ¶ 12).

The consent decree also includes injunctive relief with respect to other facilities that Defendant owns or operates. For each facility listed in Appendix B to the Proposed CD, Defendant will commission a third-party compliance audit as set forth in Appendix A and submit the final report of each audit to the EPA. (*Id.* ¶ 16.) For each facility listed in Appendix D, Defendant will implement certain practices for preparing for oil spills that go beyond minimum legal requirements. (*Id.* ¶ 17; App. C.)

## ARGUMENT

In *United States v. North Carolina,* 180 F.3d 574 (4th Cir. 1999) the Fourth Circuit explained a district court's obligation in reviewing a consent decree:

> [B]efore entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest."

*Id.* at 581 (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)). A district court is generally not entitled to change the terms of a consent decree and cannot, under any circumstances, modify the terms of a consent decree without first notifying the Parties of its intent and providing them with an opportunity to present relevant evidence and argument on the proposed modification. *Colorado*,

937 F.2d at 509-10.  Ultimately, a district court must either approve or deny a consent decree as a whole. *Id.* at 509.

The scope of a district court's review of the Proposed CD is limited.  While a court "should not blindly accept the terms of a proposed settlement," *North Carolina*, 180 F.3d at 581, and should "eschew any rubber stamp approval in favor of an independent evaluation," *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), the court's inquiry need not be all-encompassing:

> [A] trial court approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy.  In fact, it is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees.

*Bragg v. Robertson*, 83 F.Supp.2d 713, 717 (S.D. W.Va. 2000) (citations omitted).  *Accord United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 281 (1st Cir. 2000); *North Carolina* 180 F.3d at 581; *Grinnell,* 495 F.2d at 462.

Not only should a district court's review of a consent decree be narrow in scope, but it should also entail a certain degree of deference.  As the Supreme Court has stated:

> [S]ound policy would strongly lead us to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting the . . . consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting.

*Sam Fox Publ'g Co. v. United States,* 366 U.S. 683, 689 (1961).

There are several reasons for conducting a deferential review of a consent decree lodged by the United States.  One reason is "the general principle that settlements are to be encouraged." *North Carolina*, 180 F.3d at 581.  As the Sixth Circuit explained, settlement agreements, which would include consent decrees, "[spare] the burdens of trial . . . to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter." *Aro Corp. v. Allied Witan Co.*,

531 F.2d 1368, 1372 (6th Cir. 1976).  Another reason is that courts owe deference to an administrative agency acting in its area of expertise:

> Where a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility.

*Bragg,* 83 F. Supp. 2d at 717.  Finally, deference should be granted to the Proposed CD as an official act of the Attorney General,[1] who has "exclusive authority and plenary power to control the conduct of litigation in which the United States is involved, unless Congress specially authorizes an agency to proceed without the supervision of the Attorney General."  *United States v. Hercules, Inc.*, 961 F.2d 796, 798 (8th Cir. 1992) (*rev'd in part on other grounds*, 247 F.3d 706 (8th Cir. 2001) (citing 28 U.S.C. § 516; *FTC v. Guignon*, 390 F.2d 323, 324 (8th Cir. 1968)).  This authority places considerable discretion in the hands of the Attorney General to decide whether, and on what terms, to enter into a settlement.  *Hercules*, 961 F.2d at 798 (citing *Swift & Co. v. United States*, 276 U.S. 311, 331-32 (1928)); *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976) ("The Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest.").

In sum, the Court's role in reviewing this Consent Decree is limited.  If the consent decree is fair, adequate and reasonable, and not illegal, the product of collusion or against the public interest, it ought to be approved without modification.  *Colorado,* 937 F.2d at 509.

---

[1] The Proposed CD was approved by W. Benjamin Fisherow, Deputy Chief of the Environmental Enforcement of the Department of Justice, acting under authority delegated to him.

## I.     THE PROPOSED CONSENT DECREE IS FAIR AND ADEQUATE

The Fourth Circuit has detailed several factors relevant to considering the fairness and adequacy of a consent decree:

> In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. While this assessment does not require the court to conduct a trial or a rehearsal of the trial, the court must take the necessary steps to ensure that it is able to reach an informed, just and reasoned decision. In particular, the court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement.

*North Carolina*, 180 F.3d at 581 (internal quotation marks and citations omitted).

Although the Parties have not engaged in formal discovery under the Federal Rules of Civil Procedure, they have nonetheless exchanged important information during settlement negotiations, which began in 2007.  The United States has gathered documents required to be submitted to EPA under its regulations, and Defendant has responded to a formal administrative information request propounded by the EPA.

The Proposed CD was reached through arms-length negotiations in a protracted adversarial process involving representatives of the United States and Defendants, each with competing interests.  *See United States v. District of Columbia*, 933 F. Supp. 42, 49 (D.C. Cir. 1996) (finding the adversarial relationship between the Parties relevant to assessing procedural fairness).  Once the terms of the Proposed CD were fully negotiated among counsel, the resulting Proposed CD was reviewed and approved by: (1) Defendant and its management hierarchy; (2) the Assistant Attorney General for Environment and Natural Resources Division of the U.S. Department of Justice, Ignacia Moreno; (3) EPA Region III Administrator Shawn M. Garvin; and (4) the Acting Director of the EPA's Office of Civil Enforcement, Pamela Mazakas.

The United States was represented in the matter by the Environmental Enforcement Section ("EES") of the U.S. Department of Justice, the Office of Regional Counsel for EPA Region 3, and the EPA's Office of Civil Enforcement. All three entities have years of experience in handling such matters. Defendant were represented during the negotiation of this consent decree by inside and outside counsel with substantial expertise and experience in environmental law.

## II. THE PROPOSED CONSENT DECREE IS REASONABLE

The Fourth Circuit did not address in *North Carolina* what, if any, additional factors a district court must consider in order to determine if a consent decree is reasonable. Other courts, however, have addressed this issue. In *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994), the District of Colorado determined that there are four factors that are relevant to determining whether a consent decree is reasonable. First and most importantly, a court must consider "whether the consent decree is in the public interest and upholds the objectives of the [relevant statute]." *Id.* A court must also consider "(1) whether the consent decree is technically adequate to accomplish the goal of cleaning the environment, (2) whether it will sufficiently compensate the public for the costs of remedial measures, and (3) whether it reflects the relative strength or weakness of the government's case against the environmental offender." *Id.* (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 89-90 (1st Cir. 1990)).

The Proposed CD is in the public interest because it will assess and ensure compliance with regulations regarding preparations for oil spill response at a number of facilities nationwide. It is technically adequate because it resolves the violations alleged in the complaint and ensures compliance with the laws allegedly violated. The Proposed CD sufficiently compensates the public and reflects the

strengths and weakness of the government's case because it recovers a substantial civil penalty that reflects the seriousness of the violation, despite the fact that this case did not entail an actual spill of oil.

### III. THE PROPOSED CONSENT DECREE IS NOT ILLEGAL, A PRODUCT OF COLLUSION, OR AGAINST THE PUBLIC INTEREST

The Proposed CD is lawful because it was entered into pursuant to statutory authority delegated to officials at the U.S. Department of Justice and EPA. Moreover, public officials of the United States are entitled to a presumption that their actions and decisions are not illegal or a product of collusion. *See United States v. McKinley County*, 941 F. Supp. 1062 (D.N.M. 1996) (citing *United States v. Chemical Found., Inc.*, 272 U.S. 1 (1926)). However, even if they were not entitled to such a presumption, the lengthy and vigorous negotiations in which the Parties engaged prior to lodging the Proposed CD should provide the Court with adequate assurance that this settlement is not the result of collusion between the United States and Defendants. More importantly, there has not been any suggestion, despite public notice and comment, that the Proposed CD might be illegal, the product of collusion, or against the public interest.

### IV. PUBLIC COMMENTS DO NOT PRESENT A REASON WHY THE CONSENT DECREE IS NOT FAIR, ADEQUATE AND REASONABLE

The United States accepted public comment on the Proposed CD for a period of thirty days. It received one comment that arrived shortly before notice of the settlement was published in the Federal Register and a copy of the Proposed CD was posted on the DOJ's website. The commenter wrote:

> I was reading the latest disturbing news media article "BP fined after it fails surprise spill-containment inspections" (By Philip Bump 28 Sep 2012) with great interest. Please review and implement an action plan to thoroughly address this extremely troubling issue. Media reports continue to underscore the alleged widespread systemic unpreparedness regarding all oil spill response programs throughout all of BP Products North America U.S. oil facilities, especially in the State of Maryland, despite strong documentation indicating such problems exist. Please coordinate, collaborate and cooperate on Federal, State and/or local jurisdictional levels in addressing these egregious concerns potentially

>   impacting adversely the public's health, finances, policies, trust, confidence, and quality of life issues. Thank you for your time in this matter and hope to hear from you soon.

(Ex. 1.)

This comment does not present any reason why the Proposed CD is not fair, adequate, and reasonable, nor does it present any other reason why it should not be entered. The commenter requests that the United States implement an action plan to thoroughly address the alleged failures at the unannounced exercises alleged in the complaint. The commenter further suggests that the United States should coordinate with federal, state, or local officials in addressing unpreparedness for oil spill response. The Proposed CD addresses Defendant's preparedness at the Curtis Bay terminal, where the unannounced inspections took place, by requiring Defendant to comply with 40 C.F.R. §§ 112.20 and .21 (Proposed CD ¶ 10), to conduct and properly document all drills and exercises (*id.* ¶ 11.a-b), and, for a period of three years following entry of the Proposed CD, to involve contractors (Oil Spill Response Organizations) in certain drills and exercises, if Defendant chooses to rely on contractors in its Facility Response Plan (*id.* ¶ 11.c). The Proposed CD also addresses Defendant's preparedness for oil spill response on a nationwide basis by requiring an audit of its compliance with regulations regarding oil spill preparedness at the facilities listed in Appendix B to the Proposed CD (*id.* App. A) and by requiring the implementation of enhanced preparations for oil spill response at the facilities listed in Appendix D (*id.* App. C). Although the Proposed CD does not explicitly require coordination with state or local officials, the EPA has long-standing relationships with state environmental agencies such that any changes in oil response plans will be communicated to state officials in the ordinary course of business.

## **CONCLUSION**

For the reasons stated herein, the United States now respectfully moves this Court to sign and enter the Proposed CD lodged with the Court on September 27, 2012.

                                      Respectfully Submitted,

                                      IGNACIA S. MORENO
                                      Assistant Attorney General
                                      U.S. Department of Justice
                                      Environment and Natural Resources Division

| November 23, 2012 | /s/ Daniel S. Smith |
|---|---|
| Date | DANIEL S. SMITH, No. 27267 |
| | Trial Attorney |
| | Environmental Enforcement Section |
| | Environment and Natural Resources Division |
| | U.S. Department of Justice |
| | P.O. Box 7611 |
| | Ben Franklin Station |
| | Washington, D.C. 20044-7611 |
| | 202-305-0371 (voice) |
| | 202-616-6583 (fax) |
| | dan.smith2@usdoj.gov |